Last case of this morning, it's United States v. Armstrong, No. 13-3687, Ms. Brill and Ms. Fawcett. Is it Fawcett or Fawcett? Fawcett, Your Honor. Thank you. Good afternoon. May it please the Court, Alison Brill from the Office of the Federal Public Defender for the District of New Jersey, on behalf of James Armstrong. I'd like to reserve three minutes for rebuttal. That's fine. No evidence connects this gun to illegal drug activity. No evidence connects Mr. Armstrong to this gun while engaged in illegal drug activity. Has anybody done a layout of the house where the arrest took place? I actually just looked at the photographs of the house this morning. I'm not quite sure exactly what was entered into evidence. The gun was found on top of a chest of drawers? From the photographs, it appears inside of the top drawer. Inside the top drawer, and there was a scale and there was residue of cocaine on that scale. Is that correct? Yes, I believe that the residue was not visibly perceivable. And how far away was the safe in which the drugs were contained? That I don't know the answer to. It was in the same room. I don't know if it was perceived. But it was in a closet in the same room? I don't know the answer to that either. That would seem to be, when you look at Sparrow and then you contrast it with some of the cases in other circuits that have said that there is insufficiency of the evidence with regard to the gun in furtherance of, obviously you're looking at proximity as a pretty key factor. Sure. The gun was loaded? The gun was loaded. It is not proximity in the typical case because there's actually no drugs or large sums of cash in the apartment. This is actually further. But there were drugs in a safe, were there not? There was, again, just scales in the safe and the smell of cocaine. And there's actually no drugs found in the house, even though Mr. Armstrong did make a statement that he believed that a small amount of cocaine would be found in the residence, which it was not. So what we have here is further attenuated from the typical case because there's a gun, but there's no protection of anything at that time, at the relevant time. There's nothing in the house. So what was in the safe? Just scales? Yes, it was an empty safe with scales. What about the bullet? Well, the gun does not necessarily have to be at all times in the presence of drug activity if it is in a location where drug activity does occur from time to time. Isn't that correct? That's correct, but we don't have that in this case. We don't actually know very much about what went on in the apartment. We know a lot about the drug activity outside of the apartment. We have the scales. You also have a loaded gun. We do. We do. And people who possess guns legally also possess them loaded. That doesn't actually go to the fact that it could be used for protection for a legitimate purpose. But it was not, at this point, a legal gun, right? It was a legal gun. It was in his residence in Pennsylvania. The fact that he could not carry it does not mean that when it was found it wasn't a legal gun. He had a permit in Maryland, and the permit had expired. That's correct. And in Pennsylvania, you don't have to have a permit in order to have a gun. Is that correct? That's my understanding, in a residence. And there's no dispute that this was his residence. The photos show that this was, in fact, where he was living. What about in the glove compartment in the ballpark? Amber Pacozzi, Mr. Armstrong's ex-girlfriend, did testify that at one point she did see a gun in the glove compartment. That testimony had no date connected with it. There's no testimony at all that he used the car with her in connection with drug activity. We know that she received packages at her house, but the gun in the glove compartment at one unidentified time really does little to establish that the gun in the house was used to embolden the drug activity, which we don't know that occurred in the house. Can the gun in the Volvo be sufficient to make out the charge here? Can the gun in the Volvo at a time when there was no drug activity taking place make out the charge? No, wasn't there testimony that he was using the Volvo to transport? There was, and that testimony had to do with 2009 through 2011. Amber Pacozzi goes further back before even the indictment, which charged sometime unknown. It really isn't connected to drug activity. It is proof that Mr. Armstrong at one time had a gun. And that does very little to support what the government argued, which is the gun that they had in the house, which I introduced into evidence, was used to protect a drug stash or proceeds of a gun, that it was immediately accessible at the relevant time. We have almost no evidence of Mr. Armstrong ever being in the house. We know he lived there, but he was outside of the home receiving packages. What was the evidence as to where the drugs went after they were picked up from the people to whom the drugs were sent? There's no evidence. We do know that one receipt from a package, I believe, to Mr. Ank, was found in the basement of Mr. Armstrong's apartment. Not a receipt, a piece of the package which people were instructed to separate. So there's no evidence of that. But the government's argument is that this was the center of Mr. Armstrong's drug activity? I don't know that they argued that it was the center.  through an expert, which is not enough. It's not what Congress intended when it amended the statute to include possession. Mere possession plus an expert saying that guns and drugs are needed together cannot establish the requirement, which is that there's individual evidence in this particular case that the defendant actually used the gun. We don't have that evidence here. We have inference, which is unfair inference. We have a gun in the car once with his ex-girlfriend. He was charged here. Was he charged with having a gun in furtherance of a drug crime or having a gun in relation to a drug crime? Both. The indictment charged as broadly as possible, but the government clearly was arguing the more specific, which was that. What do you think is the distinction between in furtherance of and in relation to? In furtherance is a lesser quantum of evidence. It just needs to promote or advance it. In relation to would be during the activity, which there was no evidence of. So what would you need? What kind of evidence would normally one need to have an in furtherance of, but it would not be in relation to or vice versa? Well, the typical in furtherance of, possession in furtherance of, we have some evidence that the gun was possessed at the relevant time, which would be during the drug trafficking. You know, if there was some evidence that he was actually using the apartment for drugs, we know that at some time drugs passed through and the gun passed through, but we've never seen the gun in the apartment other than at the day of the search. You know, there's the typical case. There's a witness saying they saw the gun at the time that the defendant opened the door to sell the drugs. You don't need all of that amount of evidence, but you have so much less here. You have really the expert tying in truisms. You know, when there's a large stash or large sums of money, and we don't have that here. So give me an example of in relation to. In relation to would be, Mr. Armstrong is out. If somebody saw a bulge in his pants and said that was a gun at the time that I was picking up the package, which is not what we have here. We have testimony that was clearly trying to elicit that they saw a gun, and the witness said it could have been anything. So I would say that if there was actually a bulge that would be, that was a gun that was, you know, used to intimidate a person picking up a package, that would be the kind of in relation to that would support the conviction. All right. Thank you. I'd briefly like to address the other issue raised in this case, the confrontation clause issue. The district court limited cross-examination on the critical issue in the case, which was the quantity of marijuana to support the mandatory minimum being triggered, 10 years. Basically, as happens all too often, the government used its case agent, its theory, into evidence as fact. And here it's very clear that it was the government's theory, you know, closing argument, the government was saying how the case agent came about the quantity. We took the number. We came to 1,134 kilograms, exactly what the government wanted to argue. It presented as evidence. And when defense counsel approached the witness and began the cross-examination, it was almost immediately cut off. You know, and as prior counsel was saying, this is an eminently impeachable witness. This is the case agent who has a lot of expertise, a lot of knowledge that, you know, that the jury is looking at the case agent as a sort of special witness. And instead of it being treated carefully, here we have expert and fact coming in on the critical issue. And the denial of the right to cross-examine on this one point, whatever the other evidence was, this got the jury over the mandatory minimum line. And the real problem is that there was no foundation. This case agent was saying, I know every single package contained drugs. And the case agent doesn't get to do that. Another witness would not be able to do it. And here it just came in. It came in on direct examination and then it wasn't able to do it. You are allowed to extrapolate, but it's typically expert testimony, and this would not have met the expert testimony. It's not that a quantity could not have been arrived at, but not in this case, not in this way, not basic mathematics. That's not the kind of testimony that a jury needs. An expert wouldn't be able to do it, so why would a fact witness then be able to do it? What would be different from what this person would testify to as to what someone else would testify to who could have evidence brought in that would be allowed? There would be a statistical analysis that wouldn't just do basic quantity. There was a very high number on the package. One contained 85 pounds, things like that, that a statistical analysis has standards of reliability built into it. But there was cross-examination of the person who did testify, correct? There was cross-examination of the case agent, and this is the point when it was cut off. The case agent just began by saying everything contained marijuana and it was done. The real question of the foundation for that number and then how you got to, very easily the government just said it's over 1,000 kilograms of marijuana because we have 1,134 kilograms, in fact. It was very specific, and if you took a few of the boxes of the 131 boxes that were delivered out, you wouldn't get over the mandatory minimum. It's not, it's a lot of the boxes, the majority of the boxes could have been marijuana and it still would not have met the mandatory minimum. But still you had the testimony as to the amount that was paid for accepting delivery of these boxes. Yes, so there's an inference that the package was marijuana. It's different than the fact that the agent of the case said that every package absolutely contained, he was certain, he was certain that every package contained marijuana. And one of the elements in coming to that belief was the fact that $500 was paid for the delivery of these packages. That would be a reasonable inference and a reasonable argument. Is it fair to have a case agent take away argument and make it fact? It became fact on a critical issue because this is 10-year, a 10-year mandatory minimum. Mr. Armstrong has a 10-year mandatory minimum and a 5-year mandatory minimum sentence. This is, and a small amount of the packages would have changed the outcome. Inference and argument is one thing and asserting fact into the case is another. Thank you. We'll get you back to me about it. Ms. Fawcett. Good afternoon, Your Honors. Christy Fawcett appearing on behalf of the government. Contrary to the argument that was just made by Ms. Brill, I would suggest to the Court that there was a wealth of evidence, both direct and circumstantial, that the apartment in Shrewsbury had been recently used for drug activity to store drugs and to store drug proceeds. The gun, the .40 caliber firearm, Smith & Wesson firearm, was loaded. There was a round in the chamber. That gun was found in a dresser drawer. In that same dresser drawer just – But when they went through the apartment, they found a gun in a dresser drawer loaded near a scale that had residue of cocaine, is that correct? That's correct, Your Honor. And then in a nearby closet there was a safe that had a couple of scales in it, but they found that it also had residue of cocaine. That's correct. The person had the gun. He had a permit in Maryland. The permit had expired, but there was nothing in Pennsylvania that said that that would be illegal for him to possess that gun. He could possess the gun in his residence, that's correct. Which is what he did. Yes. That's where it was found. That's where it was found. And so if this case meets the in furtherance test, that's gun in furtherance of drug activity, one could make an argument. What fact pattern doesn't? Well, if I may suggest to the Court, there was additional evidence both in the apartment and concerning the circumstances of this drug trafficking operation that supported the inference or supported the finding that the gun was possessed in furtherance of drug trafficking. I think probably what you'd have to show is that his apartment was almost like the center of his activity. That the apartment, that was what was argued by the government. And that there often were proceeds and often drugs in the course of this whole endeavor that were in that apartment. Well, I would suggest that it would be important to show that there was recent drug activity, recent drugs and or recent drug proceeds in that apartment. And there is other evidence that suggests that there were. And so, because if, for example, this were, he operated out of a warehouse three miles down the road and he just happened to have a gun in his apartment, would you, that wouldn't be in furtherance of the drug activity, would it? No, not without anything else. But again, we have lots of other evidence here. And the evidence that you had that there was temporarily recent activity in the house in which there were contained in the house drugs and proceeds was what? Well, let me back up for a second and say that the evidence was also that the drug trafficking organization that existed here was a longstanding drug trafficking organization. I think that's another piece of evidence that supports the government's argument. There were numerous, numerous packages that had been delivered for a number of years. At least 16 of those packages of marijuana were delivered to that apartment. There was a FedEx air bill in that apartment that corresponded to. That was found in the basement. Yes, that corresponded to one of the marijuana packages that was received by Hank. There was a money counter in the apartment and, of course, money counters are associated with large scale drug trafficking organizations and counting of a significant amount of drug proceeds. There was a computer in the apartment. The expert who testified about the computer testified that the computer had been used at least 51 times to access the FedEx tracking website. There was testimony that on several occasions individuals drove Sechrist, one of the government witnesses, and Sechrist testified to this as well, to the Shrewsbury area for a drug deal. There was testimony from both Mr. Hank and Mr. Sechrist that two weeks prior to the search of the apartment, they were to drive Mr. Hank was to drive Mr. Sechrist to Shrewsbury for a drug deal. Now, the drug deal didn't happen in Shrewsbury. The location was changed. But the initial evidence was that that was where the drug deal was to occur, and two weeks later the apartment was searched with the evidence that I've already described to the court. The concealed nature of the apartment supports the inference, of course, that it's being used as a stash house and as a center of this activity. It's in Shrewsbury. Shrewsbury is a small town in southern New York County. It's removed. It's at least an hour to an hour and a half away from where the drug deals in Lancaster County were taking place, and it's also removed from the defendant's place of business in Baltimore. We have other evidence of the defendant's interest in, I'm sorry, the appellant's interest in illegal weapons. We have his request to Mr. Sechrist and Mr. Whittington that they purchase for him unmarked, that was the description of the gun provided by Mr. Sechrist, or illegal weapons for him. Certainly the fact that he wants to purchase illegal weapons, unmarked weapons, illegal weapons supports an inference that he wants these weapons and uses these weapons in furtherance of his illegal activity. We also have the weapon that was seen by Amber Pacozi in the glove compartment of the car that was used for countless. But that was when, 2007? I don't know that there's a date attached to that. I thought that predated the alleged conspiracy by a couple of years. I'm not sure of that, Your Honor, and you may be correct. But we do know that that car was used on numerous occasions. We had all kinds of witnesses who testified that the marijuana was placed in that car and that they were paid with proceeds that came from that car. Under all those circumstances, and it is, again, a totality of the circumstances test here, it's not just one piece of evidence. But under all those circumstances that I've described, a reasonable juror could have found beyond a reasonable doubt that the firearm in the apartment was possessed in furtherance of drug trafficking. If I didn't mention before, and I should have, I think it's also important to note that the gun was a handgun, that it was a .40 caliber firearm, and that it was loaded and had a round in the chamber. And, of course, it was very proximate or very close to other tools of the drug trafficking trade. With respect now to... Well, I mean, what you're really asking us to do is take the next step beyond our decision in Sparrow. Sparrow, the gun was found adjacent or right, you know, with drugs that were hidden. Here, the evidence of the cocaine residue was minimal, and that's not really what you're after. You're after the large-scale operation. And those drugs at the time of the arrest were nowhere near that apartment that we know of, and there were no proceeds. And yet you're saying, okay, but you need to understand the context. The context is this was a place where it was a stash house, to use your words. Yes. And stuff was coming in and stuff was going out constantly. And just the fact that it wasn't there at the time of the arrest doesn't mean that he didn't have a gun either in furtherance to or in relation to or in furtherance of. That is the government's argument. And I should also point out that Armstrong himself told the law enforcement agents they would find cocaine in the apartment. Now, they didn't. They found residue, but they found it in two locations in the apartment. And then I asked Ms. Brill the question, what do you understand as the difference between in furtherance of and in relation to? I agree with Ms. Brill that the standard of proof or the quantum of proof necessary to prove the in relation to is higher than what occurs here, and I think that that would likely require him carrying a firearm while he's actually engaged in it. It almost would seem, just intuitively, you would think that the standard of proof would need to be higher with regard to in furtherance of. In other words, you could have a gun and somehow it's related to your drug activity, but to have a gun that actually furthers that drug activity would seem, I don't know, my blank response is it would seem to be a higher standard. I realize some of the cases don't seem to support that, but the cases are quite muddied as far as I'm concerned. I think that the other, at least in my opinion, the other standard is more specific, requires a more specific factual finding. I think carrying a gun during and in relation to drug trafficking sort of lends itself to more specific fact finding than possessing a firearm in furtherance of drug trafficking, which is what, again, the government argued here. I wanted to turn, if I may, for just a minute to the second argument, and that was the argument with respect to whether or not the district court abused its discretion in limiting the cross-examination of Agent O'Donnell. And again, an important point to note here is that the district court limited that cross-examination after Agent O'Donnell had been asked time and time again whether we knew that there, for a fact, whether we were certain whether we had opened all 131 packages of marijuana. That we had not opened all 131 packages of marijuana was an undisputed fact. Armstrong's counsel had elicited that fact from Agent O'Donnell on a number of occasions before the district court finally sustained the objection that was made by the government. But that fact had been brought out on several occasions already by both actually government counsel and defense counsel, and it was, of course, argued in closing statement as well. So it was argued extensively in closing statement by defense counsel. So I would suggest to the court that the district court did not abuse its discretion, that the cross-examination was really not limited to any great extent, and that the attorney's defense counsel certainly had sufficient opportunity to explore that particular fact before the objection was sustained. What kind of a witness was he on this issue? Agent O'Donnell? Agent O'Donnell was not testifying as an expert. The calculations that he made do not have to be made by an expert. Anybody in the courtroom could have made those calculations, actually. And I don't think that anything he testified to was testified to as an expert witness. I know there's been a lot of argument and discussion about the fact that he, at one point, stated he was certain that the packages contained marijuana. That statement on his part came after a number of times in which he said, yes, we don't know for sure what's in those packages. We didn't open the packages. And he was asked his opinion by defense counsel, not by the government. And he finally said, yeah, I'm sure that there was marijuana in them. But that was his opinion after being pressed on that particular point by defense counsel extensively. Thank you. Just a few quick points and follow-up. Although Mr. Armstrong engaged in some drug trafficking here, he was also a legitimate businessman. We know from numerous witnesses and character witnesses that he – That was in Baltimore, right? He had a car dealership and he traveled to the Mannheim Auto Auction in Pennsylvania. But if the evidence was that this was a, quote, stash house, close quote, in which there was a continuing flow of drugs and proceeds from the sale of drugs there, wouldn't that – and then there was a loaded gun found in that place. Why wouldn't that loaded gun found in that place be either in furtherance or in relation to a drug trafficking crime? Well, it was also his residence whether or not there were drugs passing through it. And then the question – That's often the case. Yeah, and then the question is whether a drug dealer has any right – you know, if there's ever drug conduct going on, if there's any right to possess a gun for any legitimate purpose. What the statute requires – what this court requires from Sparrow is evidence more specific to the defendant that the gun actually furthered drug trafficking. It's not just that somebody engaging in drug trafficking possesses a gun. And it needs to be proved beyond a reasonable doubt. If all of the evidence that the government just elicited, you know, attenuated, disconnected from the gun being in the house can support maybe, maybe at some point – you know, they're saying it's a large-scale conspiracy at some time. We don't know when the gun arrived in the house. We know he was arrested on March 21, 2011. The search was March 23, 2011. The last time that a marijuana package was received at the apartment was a month prior. We don't actually know a lot, and we're left with speculation, and that is not enough to sustain the conviction. Can you explain why there were no drugs or proceeds in the house at that particular time? Sure. There's definitely no drugs or proceeds in the house, and we don't know about the gun. It was in a concealed apartment. He was on the lease. It was his sister's lease. His name was on it. That was introduced at the trial. And just to address the other issue, the question was not whether all the packages were open. That was not disputed, that all the packages were not open. Yes, the question was what they contained, and it was clear that the agent said they all contained marijuana, made a calculation, and that was not able to be examined. This is critical because this number was used to get above the line. Just because everybody in the courtroom could do it does not mean that it's okay as testimony. Case agents need to be better monitored. This is a perfect case where there's a lot of evidence, and somehow the most important piece of evidence becomes the government's theory becomes fact. I ask you on count three to find that there was not sufficient evidence, and on count one and two find that there was a constitutional violation that requires a new trial in this case. Thank you. Thank you very much. Thank you to both of you for well-presented arguments, and we'll take the matter up.